The Honorable Boyd Hickinbotham State Representative P.O. Box 326 Salem, AR 72576-0326
Dear Representative Hickinbotham:
I am writing in response to your request for my opinion on the following two questions relating to the city of Cherokee Village:
 1. Can the Suburban Improvement District [the "SID"] terminate their [sic] responsibility for road maintenance under their present charter, and if not what procedure can be undertaken to accomplish this?
 2. What procedure would be required for the Suburban Improvement District to provide funds to the city for road maintenance?
RESPONSE
I am unable to answer your first question without reviewing the terms of the SID's charter. However, assuming the SID has discharged all its debts and no provision of the charter provides otherwise, I believe the SID could terminate its responsibility for road maintenance by simply dissolving. Moreover, assuming the city has accepted the developer's dedication of the streets for public use, I believe the city is already primarily responsible for street maintenance pursuant to A.C.A. §14-301-101. With respect to your second question, I believe that if the city has accepted the dedication of the streets and accordingly undertakes road maintenance, it should directly finance such maintenance through the assessments authorized at A.C.A. § 14-301-101 et seq. I do not believe the legislature anticipated that a suburban improvement district would remain in existence solely to finance the maintenance of improvements that have been conveyed to and accepted by a municipality.
Question 1: Can the Suburban Improvement District [the "SID"] terminatetheir [sic] responsibility for road maintenance under their presentcharter, and if not what procedure can be undertaken to accomplish this?
Given that you have not provided me the charter documents for the Cherokee Village SID, I am unable to opine regarding its ability to terminate what might otherwise be its obligations. However, as I pointed out in Ark. Op. Att'y Gen. No. 2001-088 in response to a previous request from you on this issue, it appears from the documents you have previously supplied that the developer of Cherokee Village expressly dedicated the streets to the public in the bills of assurances. As I have further pointed out, assuming the city has accepted this dedication either by express ordinance or by public use, see A.C.A. § 14-301-102 and discussion in the attached Ark. Op. Att'y Gen. No. 1999-365, it will be solely responsible for street maintenance and improvements pursuant to A.C.A. § 14-301-101, which provides:
The city council shall:
 (1) Have the care, supervision, and control of all the public highways, bridges, streets, alleys, public squares, and commons within the city; and
 (2) Cause those public highways, bridges, streets, alleys, public squares, and commons to be kept open and in repair, and free from nuisance.
Compare Ark. Ops. Att'y Gen. Nos. 92-221 and 96-385 (discussing the city's and the SID's relative rights and obligations in the event ownership and control of the streets remain vested in the SID).
Section 14-92-239 of the Code provides that upon completion of an improvement, a suburban improvement district normally "shall continue to exist for the purpose of preserving, maintaining, and operating the improvement," financing such maintenance through additional levies as necessary. However, A.C.A. § 14-92-237 further authorizes a SID to dissolve once it has discharged all its outstanding indebtedness. Assuming, then, that the SID faces no debt obligation, and further assuming that no provision of the SID's charter indicates otherwise, it would appear that the SID might terminate any responsibility it would otherwise have for road maintenance simply by dissolving. However, only local counsel can determine the availability of this option after a thorough review of the facts. Moreover, as noted above, if the city by ordinance or by public use has accepted the developer's dedication of the roads, I believe the SID is already absolved of any duty to maintain the streets. Again, I am not in a position to determine whether any such acceptance has occurred.
Question 2: What procedure would be required for the Suburban ImprovementDistrict to provide funds to the city for road maintenance?
I consider this a somewhat curious question, since it appears to envision the SID continuing in existence solely to subsidize the maintenance of streets that have been dedicated to and accepted by Cherokee Village. Although A.C.A. § 14-92-210(2) authorizes a suburban improvement district to "[j]oin with any other political subdivision" in maintaining facilities "authorized by this subchapter or as to the performance of any of its functions," I question whether the legislature intended that a suburban improvement district function solely to finance the maintenance of improvements that have been conveyed to another political subdivision. Subsection 14-92-237(a)(11) of the Code anticipates that a suburban improvement district will dissolve if it has discharged its debts and "if title to and control of the facilities constructed by the district have been taken over or assumed by any political subdivision." In my opinion, even in the absence of an ordinance accepting the developer's dedication of the roads, the city's action in undertaking street maintenance would in itself amount to an acceptance of the dedication. See discussion in the attached Opinion 1999-365. Assuming the city has thus accepted the roads, I believe street maintenance and improvements in Cherokee Village should be effected through the imposition of assessments by the city itself pursuant to A.C.A. §14-301-101 et seq.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JD:cyh
Enclosure